ABBOTT *v.* VANMETER.

Opinion delivered March 15, 1920.

1. ANIMALS—KILLING BY POISON.—In an action for killing cows by means of tree poison left by defendant in an enclosure into which the animals had broken, the jury had the right to infer, from the fact that their carcasses were found in close proximity to the pot containing the poison, that the cows were killed by drinking it.

2. ANIMALS—LEAVING TREE POISON—NEGLIGENCE.—In an action for killing cows by means of tree poison left by defendant on his land, the question whether defendant exercised reasonable care by merely covering the pot with a box *held* for the jury.

3. ANIMALS — KILLING BY POISON — INSTRUCTIONS.—An instruction which declared the owner of inclosed land liable if his fence was defective, and he left exposed a vessel containing poison from which cattle drank and were killed was erroneous, as it was necessary to show that the poison solution was a substance calculated to allure trespassing animals so that the land owner was called upon to anticipate the danger and provide protection against it.

Appeal from Clark Circuit Court; *George R. Haynie,* Judge; reversed.

*John H. Crawford* and *Dwight H. Crawford,* for appellant.

1. Appellant owed no duty to make and keep his premises safe from plaintiff's trespassing cattle and the court erred in giving the first instruction on its own motion. It is misleading and prejudicial.

2. The court erred in giving plaintiff's seventh instruction.

3. The court erred in refusing defendant's first request for a peremptory instruction, and in striking from his second request the last blackfaced clause. 93 Ark. 141-151; 93 *Id.* 564, 573; 76 *Id.* 69; 94 *Id.* 282, 293. The law is correctly stated in appellant's second request. 11 R. C. L. 872. Appellant was not liable if his fences were bad and he did not properly protect and conceal the poison. 1 R. C. L. 1132; 6 Pa. St. 472; 57 Ark. 16; 52 L. R. A. (N. S.) 133; *Ib.* 140; 85 S. W. 401; 140 *Id.* 638; 59 L. R. A. 771.

4. The court erred in refusing appellant's third instruction. 46 Ark. 207; 52 *Id.* 402; 94 *Id.* 458; 117 *Id.* 1; 1 R. C. L. 1134; 41 L. R. A. 677; 59 *Id.* 771.

*McMillan & McMillan,* for appellee.

1. There was actionable negligence in the case, and appellant was liable. 98 Ark. 72; 117 *Id.* 1; 46 *Id.* 207; 116 *Id.* 163; 117 *Id.* 1; 119 *Id.* 139; 38 *Id.* 366; 27 Mont. 79; 59 L. R. A. 771, is not on all-fours with this case. See 94 Ark. 458; 46 *Id.* 207.

2. The instructions as a whole cover all the requirements of the law. 117 Ark. 1; 94 *Id.* 458.

McCULLOCH, C. J. Appellant is a farmer in Clark County, and in the spring of the year 1919 planted corn in a new-ground formerly used as an enclosed pasture. There was standing timber which interfered with the growth of the crop of corn, and in April appellant was engaged in deadening this timber by using a chemical solution commonly called "tree-killer." It is not shown by evidence what particular chemicals were embraced in the compound, further than that it contained substances which were destructive to live trees.

There is a conflict in the testimony as to whether or not the fence enclosing this particular field was such as is prescribed by statute as a lawful fence. The solution was kept in a large pot and appellant used it on a certain day in April and left the pot over night to continue the use of the tree-killer the next day. The top of the pot was covered by a wooden box. Appellee lived in the neighborhood, and was the owner of four cows which

were permitted to run at large, and they broke into appellant's inclosure during the night and drank of the chemical solution left there and were found dead the next morning.

Appellee instituted this suit against appellant to recover the value of the cows on the ground that appellant was guilty of negligence in failing to properly fence his premises and to protect the cattle which broke in on account of the insufficient fence from the exposed pot of chemical solution. Appellant denied the allegations of negligence, and on the trial of the issues before a jury appellee was awarded damages for the value of the cows which died from drinking of the solution.

The testimony as to the cause of death of the cows was inferentially established by the carcasses being found in close proximity to the pot of chemical solution. The jury had a right to infer from the circumstances that the cows drank of this solution and that it produced death. The testimony adduced by appellant shows beyond controversy that appellant took certain precautions by covering the pot, but it was a question for the jury to determine whether those steps were sufficient to constitute reasonable care so as to acquit appellant of the charge of negligence in failing to securely cover up the dangerous substance.

The only contentions made here as grounds for reversal relate to the rulings of the court in giving and refusing instructions. The court gave the following instructions at the request of appellee, and over appellant's objections:

"No. 1. You are told that it was the duty of the defendant to exercise ordinary care to place and keep the poison complained of in an inclosure such as it would not be reasonably expected that cattle running on the range would become exposed to and drink of the poison; and if you find from a preponderance of the evidence in this case that defendant's fence, inclosing the ground where the poison was, was not reasonably sufficient to keep cattle out of the field, and you further find that de-

fendant failed to cover and conceal in a reasonably good condition the pot or vessel containing the poison, and that the plaintiff's cattle became exposed to the poison and drank thereof and died from the effects thereof, you will find for the plaintiffs.''

''No. 7. If you find through and on account of negligence on the part of defendant, plaintiff's cattle came upon defendant's premises, and further find that defendant left exposed a pot or vessel containing poison and that plaintiff's cattle drank some of it and died from the effects thereof, then you will find for the plaintiffs.''

The court gave the following instruction at appellant's request after modifying the same by striking out the concluding sentence:

''No. 2. One who suffers his stock to go at large, takes upon himself the ordinary risks incident to it. He takes the permissive pasturage with its accompanying perils. ·The land owner owes no duty to cattle owners, prior to the entry of the stock upon his premises, unless it be to refrain from unnecessarily attracting or drawing them into a place of danger. And, after cattle are upon the land owner's premises, the land owner owes only the negative duty of avoiding any injury to them, which the exercise of ordinary care at that time would prevent.''

The court refused to give the following instruction requested by appellant:

''3. An owner of uninclosed, or insufficiently inclosed, lands is not liable for injuries to animals straying upon the land, unless he maintains or permits to remain thereon something in itself calculated to attract such animals to their injury; and in this case if you find from a preponderance of the evidence that the pots of poison were mixed by defendant for a lawful purpose, that is, to destroy useless timber upon his lands, and that he did not and had no reason to anticipate that plaintiff's cattle would drink the poison, the defendant will not be liable in damages, and your verdict should be for the defendant.''

The contention is that the instructions given by the court at appellee's request are in conflict with part of instruction No. 2, which the court gave at appellant's request, and that the court erred in refusing to give instruction No. 3. We think that this contention is sound, and that the court erred in its instructions. Instructions No. 2 and No. 7, given at the instance of appellee submitted the question of appellant's liability solely on the ground of negligence in failing to maintain a sufficient fence around the premises and in failing to protect and conceal the pot containing the dangerous substance, and entirely omitted the other question necessarily involved in the case whether or not there was negligence in exposing a substance which was attractive to animals. The law on this subject is well settled and is, we think, correctly stated as follows:

"The owner of uninclosed land is not in general bound to keep his premises safe for the trespassing animals of others, and if, in the ordinary use of the property, harm befalls them, their owner, by permitting them to roam at large, is held to have assumed the risk of such injury, and so is denied any right of action on that account." * * * "While the owner of land is not ordinarily responsible for injuries occurring to trespassing cattle, he is not permitted negligently to leave on his premises poisonous substances which will attract passing animals, nor can he place thereon dangerous instrumentalities, as traps baited with strong scented meats, set so near the highway on the grounds of another that the animals of others will be lured onto his lands from the place where they rightfully are to their injury or destruction. This results from the principle that where there is invitation, enticement, allurement or attraction, a person is bound, at his peril, to use reasonable care and diligence in keeping his property in safe condition." 1 R. C. L., §§ 74, 75.

That is the doctrine which was announced by this court in its first decision bearing on the question. *Jones* v. *Nichols,* 46 Ark. 207. In that case the proof estab-

lished the fact that the defendants operated a gin and maintained a pit near the highway about which was scattered cotton seed and corn, and a cow owned by the plaintiff being attracted by the food thus exposed fell into the pit and was killed. It was said that those facts made out a case of liability. That doctrine has been followed in subsequent cases and the distinction has been made in each of the cases that while the owner of premises is not ordinarily liable for injuries to trespassing animals, yet where he exposes any substance which is calculated to allure animals, he must exercise ordinary care to protect from danger the animals thus enticed upon the premises. The duty which a land owner owes to the owner of trespassing animals is merely the negative one of refraining from committing an act of negligence which would entice animals upon the premises and injure them. The rule was stated by this court in *St. Louis, Iron Mountain & Southern Railway Company* v. *Newman,* 94 Ark. 458, as follows:

"His (the land owner's) liability arises in the use of his premises when he fails to observe for the protection of the property of another that degree of care and precaution which the circumstances demand, whereby an injury results to such other person's property. He does owe, therefore, to the owner of straying stock the duty to refrain from attracting or drawing to a dangerous object or substance which he has placed upon his land such stock. Such act becomes one of negligence whereby, if injury result to another, a liability is incurred. The land owner has no right to thus actively draw into peril straying stock. He may not be under any duty to guard the stock from the dangers to which they ordinarily might be exposed, but if he places on his land a dangerous substance which would attract passing animals, and thereby the animals are injured, if the injury is the natural and probable result of the act which a prudent man would have foreseen, then the land owner is liable for the injury resulting therefrom."

To the same effect is *St. L., I. M. & S. Ry. Co.* v. *Wilson,* 116 Ark. 163; *Buckeye Cotton Oil Co.* v. *Horton,* 117 Ark. 1. The same doctrine is announced in the case of *St. L. & S. F. Rd. Co.* v. *Williams,* 98 Ark. 72, with respect to the liability of a railway company for putting out a torpedo on its own premises. And such is the doctrine of this court announced in *Brinkley Car Co.* v. *Cooper,* 70 Ark. 331, in regard to liability for injuries inflicted upon children by reason of negligence in exposing them to dangerous substances or situations which are attractive to children. That is the basis of the doctrine of the so-called "Turntable Cases." *Railroad Co.* v. *Stout,* 17 Wall. 657.

This rule is well supported by the text writers on the subject and by adjudicated cases in other jurisdictions. Prof. Thompson states the rule as follows:

"Where domestic animals are allowed to run at large, and they stray upon uninclosed lands and are injured, the owner of the lands cannot be held liable therefor. A land owner is no more obliged to prepare his land in any particular way for the protection of his neighbor's cattle, not invited or tempted to come upon it, than for the protection of his neighbor himself. For example, land owner is under no obligation to fence his land bordering on the highway, or to keep up such fences or the gates in them, so as to prevent the animals of another, which are allowed to run at large upon the highway, from getting through his land upon a railway track and there being killed." Thompson on Negligence, § 959.

The same author, at another place (§ 955), states the law on this subject as follows:

"The same rule, subject to qualifications, applies in the case of injuries to domestic animals through pitfalls or other dangers upon uninclosed grounds. That rule is that the owner or occupier of land is under no legal obligation to take special care or pains to the end of keeping it safe for the protection of the animals of others which may be allowed to run at large—and this without reference to the question whether the rule of the 'English

common law' prevails, which required the owners of domestic animals to restrain them at their peril, or whether the rule of most of the American States prevails, which allows domestic animals to run at large, and required the owners of cultivated fields to fence them."

This subject is elaborately treated in the note to the case of *Gillespie* v. *Wheatland Industrial Co.* (Wyo.), 52 L. R. A. (N. S.) 133. The following cases are also instructive: *Strong* v. *Brown* (Idaho), 52 L. R. A. (N. S.) 140; *Beinhorn* v. *Griswold* (Mont.), 59 L. R. A. 771; *Muir* v. *Thixton, Millett & Co.*, 119 Ky. 753; *Morrison* v. *Cornelius*, 63 N. C. 346; *Tennessee Chemical Co.* v. *Henry*, 114 Tenn. 152, 85 S. W. 401; *Turner* v. *Thomas*, 71 Mo. 569; *Sweeney* v. *Old Colony & Newport Rd. Co.*, 10 Allen, 368.

The case of *Beinhorn* v. *Griswold*, cited above, is especially in point in view of the fact that the injury was caused by exposed chemical substance on the premises of the defendant which caused the death of plaintiff's cow. The case of *Tennessee Chemical Co.* v. *Henry* is also in point for the same reason.

Applying those principles to the facts of the case at bar, the error of the court in its instructions is emphasized. It cannot be assumed as a matter of law that the chemical substance was of itself alluring to cattle so that appellant was bound to anticipate the danger. The evidence in the case does not even disclose the contents of the solution except that it was designed to kill trees. The only evidence that it was dangerous to animals was that these cattle were killed by drinking it. It was an essential part of appellee's case to show that the solution was a substance was calculated to allure trespassing animals so that the land owner was called on to anticipate the danger and provide protection against it. The two instructions given at the instance of appellee entirely ignored this element of liability on the part of appellant and permitted the jury to award damages merely upon the finding that an insufficient fence was maintained around the premises and that proper care

was not observed in protecting the solution from trespassing animals.

Instruction No. 2, requested by appellant, as modified and given by the court, correctly embraced the principle of law applicable and was in conflict with the instructions given by the court at the request of appellee. Instruction No. 3, requested by appellant and refused by the court, more concisely stated the law as applicable to the case and should have been given. It constituted prejudicial error to refuse this instruction.

For the errors indicated, the judgment is reversed and the cause remanded for a new trial.

HART and HUMPHREYS, JJ., dissent.