[No. 24609. Department One. December 7, 1933.]

P. A. MURRAY, *Respondent,* v. OREGON-WASHINGTON RAILROAD & NAVIGATION COMPANY, *Appellant.*[1]

[1]Reported in 27 P. (2d) 574.

*Hayden, Merritt, Summers & Bucey,* for appellant.

*A. P. Wilson,* for respondent.

MILLARD, J.—As a fire protection measure (to prevent spreading of fire from the right of way), each spring for several years prior to 1931, the defendant endeavored to kill the weeds and grass on its right of way by spraying the vegetation with oil and burning same. In the spring of 1931 and the spring of 1932, the defendant used a poisonous spray to kill the vegetation. In May, 1932, the defendant sprayed the grass and weeds along the railway track within its station grounds at Cedarville, with a poisonous solution known as sodium arsenite.

This action was instituted to recover damages arising through the death of four cows and the illness of another from eating the grass upon which, plaintiff alleged, the defendant sprayed poison in May, 1932, with knowledge that plaintiff's and other persons' cows were accustomed to graze upon the defendant's right of way. The defendant's challenge, at the close of plaintiff's case, to the sufficiency of the evidence was sustained, and the jury was discharged.

Expressing the view that there was sufficient evidence to go to the jury on the question of whether the spraying of the vegetation with the poisonous solution constituted wilful and wanton conduct, the court granted plaintiff's motion for a new trial. That motion was supported by affidavits to the effect that cattle were attracted by grass sprayed with sodium arsenite and would eat same "in preference to the grass that had not been sprayed." From the order granting plaintiff's motion for a new trial, the defendant has appealed.

The Cedarville railway station lies northwest of

Centralia, between the termini Centralia and Aberdeen, on appellant's railway line. The course of appellant's railway through the Cedarville station grounds is from southeast to northwest. The appellant had a small building, but did not have an agent, at Cedarville. Within the station grounds, appellant had a main-line track and a switching track. The logging railroad track of the Schafer Brothers Logging Company was parallel with appellant's main-line track. Immediately south of the station grounds is a public highway running east and west. That highway intersects the three railroad tracks above mentioned.

Respondent owned a dairy farm south of, and adjoining, the highway, and three-fourths of a mile west of the railway tracks. Adjoining the station grounds on the east, and north of the county road, was a tract of pasture land of which respondent was the lessee. The southern boundary of this tract and the eastern boundary, which adjoined another public highway, were unfenced. Respondent and others pastured their cows upon this open field. When respondent desired his cows to feed on the tract described, it was necessary for him to turn them onto the public highway immediately north of his dairy farm, and they would travel, unaccompanied, in an easterly direction until crossing appellant's railway tracks, where they would reach respondent's pasture land. In the evening, the cows returned alone to respondent's home, or some one went for them. During the day, the cows roamed at will over the highways and the open field. There was no way other than the public road over which the cattle could travel from respondent's dairy farm to the pasture east of appellant's tracks.

Appellant's right of way was enclosed by a fence at all points except where intersected by highways.

There was evidence that the cattle guard on the Schafer railroad track was constructed so as to permit cattle to enter appellant's right of way. There was no fence between the logging railroad tracks and the tracks of the appellant. There was evidence that the fence was down along the highway so that cattle could enter appellant's right of way at places other than the Schafer cattle guard. Witnesses also testified that appellant's employees saw cattle feeding within the station grounds many times prior to May, 1932, and drove them therefrom.

In 1932, about two weeks prior to the spraying of the right of way with the poisonous solution, the appellant posted a notice to "keep all animals away," on the crossing sign posted at the highway crossing at the end of the station grounds. Another notice of the same kind was posted at a store in the neighborhood. Appellant's section foreman notified farmers in the neighborhood that the right of way would be sprayed with poison, and to keep their cattle off the tracks. He did not, however, notify the respondent, who never saw the notices and did not know that the vegetation had been poisoned.

The day following the placing of poison upon the right of way, respondent's cows were turned onto the highway at his dairy farm to go over and feed on the pasture land described above. No one was sent with the cows to see that they went to the pasture land, or that they stayed there. Respondent's cows strayed onto the right of way and ate of the poisoned grass. That afternoon, when respondent went to look for his cows, he saw five of them on the crossing at the highway, being driven out of the station grounds by an employee of appellant. Respondent went to the pasture land for the other cows and drove them home.

Four of the five cows that ate of the poisoned grass died. The fifth recovered.

Insisting that, under the statute (Rem. Rev. Stat., § 10507), it was not required to fence its station grounds, nor was it under any legal duty to install and maintain cattle guards where its tracks crossed the highway, as the station grounds were wholly within the limits of a sidetrack or switch, appellant contends that its station grounds were wholly enclosed by a fence, except where its two railway tracks and the one logging road entered, at which places there were cattle guards.

Let us assume that appellant was not required to fence its station grounds. There was evidence which, if believed by the jury to be true, would sustain the position of respondent that the station grounds were unenclosed and open to stock; that is, while appellant's right of way was enclosed by fence at all points except where intersected by highways, the cattle guards on the Schafer track did not prevent cattle from entering the right of way, as there was no fence between the Schafer track and appellant's tracks. So, too, there was evidence that appellant's fence was down along the highway and permitted the entrance of cattle upon appellant's right of way at points other than the Schafer cattle guard. There was evidence also that appellant's employees knew that cattle were accustomed to graze on the right of way; that is to say, appellant had notice that cattle frequented the place where it intended to, and did, spray the poison.

The knowledge that appellant intended to spray the right of way was not brought home to the respondent. Respondent was under no legal duty to keep his cattle within an enclosure. It further appears, from the affidavits in support of the motion for a new trial, that sodium arsenite was a salty solution that at-

tracted animals on the highway as they approached the right of way, and that grass sprayed with such solution was eaten by the cattle in preference to unsprayed grass.

"While the owner of land is not ordinarily responsible for injuries occurring to trespassing cattle, he is not permitted negligently to leave on his premises poisonous substances which will attract passing animals, nor can he place thereon dangerous instrumentalities, as traps baited with strong scented meats, set so near the highway on the grounds of another that the animals of others will be lured on to his land from the place where they rightfully are to their injury or destruction. This results from the principle that where there is invitation, enticement, allurement, or attraction, a person is bound, at his peril, to use reasonable care and diligence in keeping his property in safe condition. . . . Liability in this class of cases is based on negligence, which is determined by the question whether or not a person exercising reasonable care and prudence would apprehend injury to animals by reason of the character of the attraction." 1 R. C. L. § 75, p. 1133.

See, also, *St. Louis, I. M. & S. Ry. Co. v. Newman*, 94 Ark. 458, 127 S. W. 735, 28 L. R. A. (N. S.) 83, 140 Am. St. 134.

An apposite authority is *St. Louis-San Francisco R. Co. v. Fletcher*, 159 Ark. 344, 253 S. W. 12, 33 A. L. R. 445. That was a case where a railroad company sprayed poison on its right of way for the purpose of killing vegetation growing thereon, without warning cattle owners of its intention to spray the right of way, although cognizant of the fact that cattle were accustomed to graze thereon, and making no effort to prevent the cattle from feeding on the poisoned grass. It was there held that the railroad company was liable for the death of cattle from eating the poisoned grass, although a special act was in force prohibiting the

owners of cattle from allowing them to run at large. The court was of the opinion that, though the cattle were trespassing, under the circumstances the company should have foreseen that the cattle might be killed as a consequence of spraying the grass. The court said:

"The facts detailed above are sufficient to support the finding that the chemical mixture sprayed by appellant upon the grass growing upon its right of way was a poisonous substance, deadly not only to vegetation but to animals eating the vegetation; also that appellant's operatives knew that cattle were in the habit of grazing on the right-of-way, and were then grazing, where they sprayed the poison. Appellant's contention is that its only duty to trespassing cattle was not to invite them upon the right-of-way by placing dangerous, attractive substances thereon; and that it was not liable in damages for spraying poison on vegetation grown on its private property, upon which trespassing animals were then grazing or were accustomed to graze. We are unable to indulge the nice distinction that the property owner may poison uninvited cattle when trespassing on his private premises, with impunity, and may not poison trespassing cattle, without incurring liability, which were attracted thereon by a poisonous mixture. . . . In the instant case the company had notice that the cattle frequented the place where it was spraying the poison, and that the cattle were grazing there at the time, and should have foreseen that the cattle would be killed as a consequence of spraying the grass which they were eating, or would eat, with a poisonous mixture."

We have examined all of the authorities cited, and they are either in harmony with this opinion or distinguishable therefrom on the facts. The facts of this case presented for the determination of the jury the question whether the act which produced the injury of which respondent complains was committed under such circumstances as to evince a reckless disregard

of the consequences of the act. It comes within the rule of *Price v. Gabel,* 162 Wash. 275, 298 Pac. 444, that

"To constitute a wilful and wanton injury, the act which produced it must have been knowingly and intentionally committed, or it must have been committed under such circumstances as to evince a reckless disregard of the safety of the person injured."

Affirmed.

BEALS, C. J., STEINERT, MAIN, and MITCHELL, JJ., concur.