Hillsborough, } No. 3037.
Feb. 7, 1939.

JOHN E. KELLY *v.* STANLEY SIMOUTIS.

*Frank B. Clancy* and *Albert Terrien*, for the plaintiff.

*Thomas J. Leonard* and *John R. Spring*, for the defendant.

MARBLE, J. ·The following statute (Gen. Stat., Conn., s. 1628) was in force in Connecticut at the time the plaintiff received his injury: "No person transported by the owner or operator of a motor vehicle as his guest without payment for such transportation shall have a cause of action for damages against such owner or operator for injury, death or loss, in case of accident, unless such accident shall have been intentional on the part of such owner or operator or caused by his heedlessness or his reckless disregard of the rights of others. . . ."

"The purpose of this legislation was to deny a recovery for negligence against one transporting in his automobile a member of his family, a social guest, or a casual invitee in an action brought by the recipient of his hospitality." *Bradley* v. *Clarke*, 118 Conn. 641, 643.

The plaintiff's evidence tended to prove the following facts: The plaintiff had worked in a foundry in Nashua for about thirty years. In 1933 this foundry was closed and he and other workmen, including the defendant, obtained employment in New Britain, Connecticut. An arrangement for transportation to and from New Britain each week was made with one McAdoo, a workman who owned an automobile. A few weeks previous to the accident McAdoo's automobile broke down, and a similar arrangement for transportation was then made with the defendant. By the terms of this arrangement each passenger was to pay the defendant two dollars for the round trip, payment being made the last of each week when the workmen received their pay. The defendant was on his way to New Britain, with the plaintiff, McAdoo, and Ivan R. Smith (a workman) as passengers, when the accident occurred.

The defendant's testimony may be summarized as follows: After McAdoo's car broke down, McAdoo came to the defendant's house and asked him if he would take thereafter in his car the workmen whom he (McAdoo) had been carrying. The defendant agreed to do so. The plaintiff was not a passenger on the first trip. The next week the defendant was sick and McAdoo drove the car. The workmen did not pay the defendant for the use of the car that week. (Whether or not they paid for the gasoline consumed does not appear.) On the third trip the defendant had as his passengers the plaintiff, McAdoo, and Smith. No money was paid the defendant for transportation until the end of the week when McAdoo, on the return trip, "said they got to pay for the gas and oil." At that time the plaintiff paid the defendant two dollars. The next trip was on the day of the

accident. Nothing was paid that day, but no return trip was ever made, for the plaintiff was taken to the hospital and the car was so badly demolished that it had to be sold for junk.

The only reasonable conclusion to be drawn from the evidence is that the plaintiff was riding in the defendant's car at the time of the accident by virtue of a business relationship which conferred a benefit upon both parties. The defendant nowhere states that McAdoo asked him to carry the workmen gratuitously, and the inference is inescapable that both the defendant and the workmen understood that the defendant was operating his automobile under the same financial arrangement which had prevailed all along while McAdoo's car was in use.

The Connecticut decisions appear to be in accord with the view expressed in the case of *Maryland Casualty Co.* v. *Martin*, 88 N. H. 346, 349, that a workman who carries other workmen to their place of work upon an understanding that they shall contribute toward the expense of operating his car enjoys a pecuniary gain from the arrangement in the lessened cost of operation and is therefore transporting passengers for payment. See *Kruy* v. *Smith*, 108 Conn. 628, 631; *Russell* v. *Parlee*, 115 Conn. 687; *Chaplowe* v. *Powsner*, 119 Conn. 188, 192; *Bree* v. *Lamb*, 120 Conn. 1, 3. There was no error in the ruling of the Presiding Justice that the plaintiff at the time he received his injury was a passenger for hire.

The plaintiff offered to show through a traffic officer that the defendant was arrested for reckless driving in connection with the accident, that he was convicted and fined, and that he "appealed to the higher court and then vacated his appeal and paid the fine." This evidence was excluded on the ground that the record was the best evidence. Later the defendant himself was required to state, against his exception, that he was arrested and paid a fine of $25 and costs. This evidence when introduced was inadmissible, since it involved no admission of guilt. *Caverno* v. *Jones*, 61 N. H. 623, 624, and cases cited. Defendant's counsel did not see fit, however, to stand upon the exception but proceeded to ask the defendant several times if he didn't pay the fine because it was the cheapest way out. When these questions were objected to, counsel continued: "Tell us, whether or not you paid a fine because you thought you were guilty?" The defendant answered, "Yes, sir."

This answer rendered admissible the evidence to which exception had been taken. "That which was subject to an objection at the time when it was introduced, became relieved from the objection

interposed by the subsequent act of the objector himself." *Lyford* v. *Thurston*, 16 N. H. 399, 405. To the same effect, see *Duteny* v. *Company*, 84 N. H. 65, 69 and cases cited. The defendant later declared that he didn't want to pay the fine but "wanted to go in the other court." The extent to which this assertion weakened, if at all, the force of the previous answer was a question for the consideration of the jury. If the defendant desired a special instruction on the subject, he should have requested it. *State* v. *Mannion*, 82 N. H. 518, 525.

The officer whose duty it was to patrol the highway on which the accident happened observed the collision. He stated that the speed at which the defendant was driving was forty to forty-five miles an hour. Counsel for the plaintiff in his argument to the jury said: "I say that Simoutis was coming along at a clip of 40 to 45 miles an hour, as the officer testified, and that officer was on duty right there. It is the duty of those fellows to be able to estimate speed; they are dealing with it every day."

The defendant excepted to the allowance of this argument on the ground that there was no evidence that it was the officer's duty to estimate speed. The exception is without merit. No evidence was necessary to establish the well-known fact that an officer who patrols the highways is required to judge the speed at which automobiles are being driven.

Subject to exception, the court permitted the officer to express the opinion that the driver of the car with which the defendant collided had no chance to protect himself. The exception presents no question of law. *Reed* v. *Company*, 84 N. H. 156, 161; *Dimock* v. *Lussier*, 86 N. H. 54, 59; *Christie* v. *Company*, 87 N. H. 236, 239.

*Judgment on the verdict.*

All concurred.