100 P.2d 229

REIF v. MORRISON.
No. 4515.

Supreme Court of New Mexico.
March 5, 1940.

Adolf J. Krehbiel, of Clayton, for appellant.

Bate Bond, of Clayton, for appellee.

BICKLEY, Chief Justice.

The question here presented is whether the first amended complaint of plaintiff and appellant stated a cause of action. It is not important whether the pleading of defend-

ant and appellee by which he attacked the amended complaint may be called a demurrer or motion for judgment on the pleadings, the question becomes one of simply testing the legal sufficiency of the facts pleaded by the amended complaint.

Without undertaking to set out in full the matters alleged in the amended complaint (hereafter to be referred to as the complaint), it may be said that the following facts were substantially alleged: That defendant, living upon a neighboring farm and in a house in the vicinity and in full view of the land and leased premises hereinafter referred to, sometime in the month of July, 1938, without right, but as a trespasser, entered upon the land of one Roberts and there left exposed and uncovered poisoned feed, consisting of bran and sawdust, which he, the defendant, so stored and placed upon said land without notice to the owner or other persons, and that defendant permitted the said stored and poisoned feed to remain on said premises so exposed continuously from the time the same was placed there until after the injury complained of and as hereinafter set out, was suffered by plaintiff.

That the lands in question were adapted to the use and were usable primarily as grazing lands though they were not used by any one at the time of the storing thereon of the said poisoned feed; but, that plaintiff leased from the said owner the said lands thereafter and in October of said year and immediately placed thereupon a number of head of cattle and that a large number of the cattle ate of the said feed, were poisoned and died as a result thereof, all to plaintiff's damage, in an amount therein stated.

There is the further allegation that after plaintiff's cattle were placed upon said leased pasture land and before they had eaten of any of the said poisoned feed, defendant had personal knowledge of the fact that plaintiff had so leased the said land from the owner and had placed his cattle thereupon, but that defendant nevertheless took no steps to give plaintiff notice, remove said feed from the premises or to protect plaintiff's cattle from the danger; that plaintiff himself had no knowledge of the trespass by which defendant had, without permission or knowledge of the owner, entered the lands of the owner and placed the feed thereupon as alleged.

In questioning the legal sufficiency of the complaint to state a cause of action defendant admits, for the purpose of the argument, that were it the owner of the land himself who might be complaining of such injury a different question would be presented. But, he argues, plaintiff, not being in July, 1938, the owner of the land upon which he was alleged to have trespassed or the lessee thereof, no duty was owing plaintiff or other persons who might have had occasion to use the land, because there was no privity of contract between the plaintiff and any such other person, including defendant.

There is no allegation or suggestion that the injury suffered was maliciously caused.

The poisoned feed was a left-over or unused portion so stored during the general fight upon grasshoppers infesting this and other communities of the state, and was placed upon the neighbor's land as a matter of convenience to defendant.

The answer to the question of whether the plaintiff thus states a cause of action against defendant of course rests upon a determination of what duty was actually owing to plaintiff by defendant, plaintiff not being the owner of the land and not at the time of the original trespass, making use thereof.

The fact that defendant was a trespasser upon the land of the owner, when he placed and stored the feed in his pasture, could not affect the question here, excepting as it might resolve any question of the owner's knowledge and consent to the act, and perhaps as it might answer any suggestion or charge against the owner of his assumption of responsibility for protecting the feed from exposure to live stock that might thereafter be put upon the land. The complaint, however, alleges the trespass and negatives any knowledge of the presence of the poisoned feed by any other person excepting the defendant.

Should defendant, as a reasonable man, acting under these circumstances, knowing the use to which it was adapted and the use to which the land would likely be put, and particularly thereafter when he saw the use to which plaintiff was in fact putting it, have taken some steps to remove the feed or keep the cattle from reaching it or to advise the user, plaintiff here, of the imminent danger should his cattle discover and eat it? We think so. Defendant owed the duty of at least reasonably undertaking to protect plaintiff from the loss which defendant's own negligence was under the circumstances reasonably calculated to cause.

Defendant misunderstands or misapplies the rule of negligence which plaintiff would here invoke. Likewise plaintiff has erroneously placed reliance upon Section 35-2427, N. M. Comp.St. 1929, which, among other things, refers to the crime of willfully and maliciously administering or exposing any poison substance, "with intent that same may be taken or swallowed" by any live stock or other animals.

Plaintiff argues that to poison live stock in the manner alleged in the complaint, being in violation of the statute is negligence per se and seeks thus to strengthen his case as pleaded. He overlooks, however, the obvious fact that there must be a willful and purposeful act in exposing the poison to bring it within the criminal statute and thus make the act one of negligence per se.

If plaintiff has set out a cause of action by his complaint, it is simply one of negligence, not implying a willful wrong, but showing merely an injury suffered by plaintiff resulting from the actionable negligence of defendant.

Defendant relies upon the occurrence of an "intervening cause", that of the renting of the land by plaintiff and the placing of

his cattle thereon—an event, he says, which he should not be required to anticipate—to break the connection and absolve defendant from negligence.

The universal rule for whose support there need be no full citation is that: "If the occurrence of the intervening cause upon which defendant would rely, might reasonably have been anticipated, such intervening cause will not interrupt the connection between the original cause and the injury." 45 C.J. 934.

The rule of "reasonable care", which is the test universally applied to cases of ordinary negligence, usually includes two persons, or one person and some right or property of another. It has to do with one's acts with reference to the person, property or rights of another. It is a rule of relation. 20 R.C.L. 46, Par. 40. "The rule of reasonable care, under the circumstances, could not limit the conduct of Robinson Crusoe as he was first situated; but as soon as he saw the tracks in the sand the rule began to have vitality," said the court in the often-quoted case of Garland v. Boston & M. R. R., 76 N.H. 556, 86 A. 141, 46 L.R.A.,N.S., 338, Ann.Cas. 1913E, 924. "He then had notice that there might be other persons on the island; and this knowledge of their presence made it his duty as a reasonable man to use reasonable care to the end that no act of his should injure them."

Of course, where there is no contractual relation between the party complaining and the defendant charged with the injury there must be knowledge of the dangerous character of the thing dealt with. Wood v. Sloan, 20 N.M. 127, 148 P. 507, L.R.A. 1915E, 766, citing O'Neill v. James, 138 Mich. 567, 101 N.W. 828, 68 L.R.A. 342, 110 Am.St.Rep. 321, 5 Ann. Cas. 1062. The complaint here alleges knowledge on the part of the defendant of the character of the bran and sawdust as being poisoned and of the kind used for killing grasshoppers, and that defendant knew, or as a reasonably prudent person making use thereof should have known, that it would likewise kill cattle if they came and fed upon it, and that they would naturally be attracted to such feed.

It is urged that defendant could not have known that plaintiff was to lease and use the land for his cattle at the time the poisoned feed was placed upon the premises, although he might have anticipated that the owner might have himself used it.

We are unable to see the distinction that defendant seeks to draw. The fact that defendant trespassed upon the lands of the owner, Roberts, to place and store the poisoned feed, and that the owner of the land himself had no notice of its presence, would certainly lend weight to the argument that defendant should all the more be chargeable with negligence. He alone knowing of its presence had all the more reason to believe that cattle of the owner or another might be put upon the land and come upon the exposed feed and be injured thereby.

The privity of contract rule, relied upon by defendant, has no place in the situation presented here. We are here concerned with a question which involves conduct which would be negligent whether injuries resulted to the owner of the land using it under the circumstances, and who had no notice of defendant's acts, or to others likely to thus use the land, or actually using it with defendant's knowledge and likewise without notice of the hazard.

The complaint alleges notice on the part of defendant of the kind of use to which the land was adapted, alleging that it was "customarily used for the grazing of livestock"; and, moreover, there is the allegation that before plaintiff's cattle were killed by the poisoned feed, "defendant had personal knowledge and himself observed that plaintiff had placed his cattle in said pasture upon said lands whereon said poisoned substances were stored," but took no steps to protect said cattle therefrom, though defendant lived nearby and upon adjoining land to the pasture in question.

The books are replete with authority to the effect that those handling, storing or using dangerous instrumentalities such as explosives or poison owe a duty to the general public, to all who might ordinarily be expected to be endangered thereby or have their property exposed thereto. And this applies as well to injuries to live stock. See St. Louis-S. F. R. Co., v. Fletcher, 159 Ark. 344, 253 S.W. 12, 33 A.L.R. 445; Wolfsen v. Wheeler, 130 Cal. App. 475, 19 P.2d 1004; Miles v. A. Arena & Co., 23 Cal.App.2d 680, 73 P.2d 1260; Sprankle v. Bart, 25 Ind.App. 681, 58 N.E. 862; Williams Estate Co. v. Nevada Wonder Min. Co., 45 Nev. 25, 196 P. 844; 45 C.J., Negligence, 848, § 268.

The rule is universal that the injury resulting from any act of negligence must, however, have been such as a reasonably prudent person should have anticipated. 45 C.J. Negligence, § 27.

Poison thus exposed upon grazing land is highly dangerous not only to live stock of the owner but to that of any one likely to make use of the land. Those negligently exposing the property of others to its killing effect may not say that there was no obligation owing to any other person save the one on whose lands it was placed.

If it may be said that under the circumstances as set forth by plaintiff, a reasonably prudent person would have foreseen the possibility of live stock getting to the feed and so suffering injury therefrom, defendant is answerable for his negligence to plaintiff, even had he (defendant) no actual notice of plaintiff's use of the land as pasturage.

But, quite aside from the question of whether defendant might have been excused, since he knew at the time the land was not being used for grazing or other purposes and whether it be alleged that he neither knew or had reasonable cause to suspect the land would soon be so used, when he placed the poisoned feed there; yet, can it be said that when he saw and knew of the

use to which plaintiff, the lessee, was putting the land in October of that year, that he did not at least then owe a duty to notify the user of the pasture that the poisoned feed had been placed thereon and that cattle using the pasture would, unless the food stuff be protected, find it? We think not.

As was said in the case of Wolfsen v. Wheeler [130 Cal.App. 475, 19 P.2d 1007], supra, where the California court held it to be a question for the jury whether defendant would be liable for spreading poisoned feed intended for the killing of rodents so that certain sheep of plaintiff thereafter pasturing upon the land died from eating thereof: "The conditions surrounding the use of the field, the intended use of the field, and the purposes for which the field was adapted must all be taken into consideration in determining whether the distribution of the thallium was in fact negligence. * * * The question arises—knowing that the field was to be used for pasturage purposes, what would men of prudence ordinarily do, and what precautions would they take in using a deadly poison? * * *"

That court then cites from 19 Calif. Jurisprudence 548 the following definition of negligence, which it approved as applicable: "The failure to observe, for the protection of the interests of another person, that degree of care, protection and vigilance which the circumstances justly demand, whereby such other person suffers injury."

A cause of action was stated by the amended complaint and it was error to dis-

miss it and the action based thereon. For the reason given the cause will be remanded with directions to reinstate the cause, set aside the order granting judgment of dismissal and proceed in a manner not inconsistent with this opinion, and

It is so ordered.

BRICE, ZINN, SADLER, and MABRY, JJ., concur.