587 P.2d 966

R. John TURNER, Plaintiff-Appellee,

v.

Edward M. SILVER, Defendant, Third
Party Plaintiff-Appellant,

v.

DAVID B. HIBLER AND GREEN CHA-
PARRAL TURF RANCH, INC., Third
Party Defendants-Appellees.

No. 3193.

Court of Appeals of New Mexico.

Oct. 17, 1978.

Writ of Certiorari Denied Nov. 28, 1978.

314

James C. Ritchie and Kenneth J. Ferguson, Rodey, Dickason, Sloan, Akin & Robb, P. A., Albuquerque, for third party plaintiff-appellant.

Harold D. Stratton, Jr. and Robert N. Singer, Coors, Singer & Broullire, Albuquerque, for third party defendants-appellees.

## OPINION

SUTIN, Judge.

Silver is the defendant who as a third party plaintiff filed a third party complaint against Hibler and Green Chaparral Turf Ranch, Inc., his employer, as third party defendants (Hibler). Hibler was granted

summary judgment. Silver appeals. We affirm.

Hibler was operating a pickup truck east on Highway I–40 approaching an exit to Louisiana Boulevard in Albuquerque when his motor stopped. Turner, plaintiff, stopped some five or six cars behind Hibler. Without any explanation, Silver, while operating his car, smashed into the rear end of Turner's car, injuring Turner. The trial court found that "There is no issue of fact or evidence that the third party defendants were negligent in proximately causing the accident in question."

The only question on this appeal is whether a genuine issue of material fact exists that Hibler's negligence proximately caused Silver to smash into Turner.

The facts most favorable to Silver are as follows:

Hibler, about 16½ years old, was driving a pickup truck 55 to 60 miles per hour east in the center lane of Highway I–40, a three lane highway, intending to exit on Louisiana Boulevard. It was noon time and traffic was heavy. The pickup had two gas tanks; the main tank and an auxiliary tank. The pickup was operating on the auxiliary tank. Hibler had not checked the amount of fuel in the tanks. Suddenly the auxiliary tank became empty, the motor stopped running, and the pickup coasted for about a quarter of a mile and stopped in the center lane. Hibler turned on his emergency flashers as soon as he thought something was wrong.

The gas lines were empty. Hibler thought the gas lever was pointed to the main tank, but it was on the auxiliary tank. He switched the lever and tried to start the motor for about two minutes, but the pickup moved so slowly that the gasoline would not pump into the gas lines, and the battery went dead.

While coasting, Hibler tried to turn to the right lane and off the road, but traffic was moving in the right lane and no one allowed him to do so. He could not turn to the left because "the drainage ditch" was there. After the pickup stopped, Hibler and his guests tried to push the pickup off the center lane. Approximately 5 or 6 minutes had passed from the time the motor stopped to the time the pickup was pushed. Vehicles in the right lane had stopped and were backed up for a half mile or a mile to the rear, or west. Vehicles in the left lane were moving. There were about five or six vehicles stopped behind Hibler's pickup which were unable to pass. Plaintiff, Turner, operated the last vehicle that stopped behind Hibler's pickup.

As Hibler was trying to push his pickup off the road, another man with a pickup began to push the Hibler truck off the road. During this event, Silver, driving east, smashed into the rear end of Turner's vehicle.

Hibler was given a traffic citation for "obstructing traffic" and paid a $10.00 fine, but understood that he was guilty.

Silver presented no affidavits, evidence, facts or testimony to explain his own conduct with reference to striking Turner's vehicle.

Silver claims that a genuine issue of material fact exists whether Hibler was negligent, and whether his negligence was a direct contributing cause of the accident.

A. *A genuine issue of material fact exists whether Hibler was negligent.*

A genuine issue of material facts exists whether Hibler was negligent in one respect.

Hibler was driving the truck on a heavily trafficked freeway in Albuquerque. He knew or should have known that if the truck ran out of gas, traffic in the center lane would back up behind the stalled truck. Hibler owed a duty to other drivers on the highway to take reasonable precautions to prevent the truck from stopping on the highway. *Keller v. Breneman,* 153 Wash. 208, 279 P. 588, 67 A.L.R. 92 (1929). Hibler seems to have taken no precautions to avoid this event. A genuine issue of material fact exists whether Hibler was negligent.

Hibler strenuously argues that the pickup did not run out of gas; that it was a

mechanical failure and that "it is incredible that Silver could contend that Hibler ran out of gas." A party granted summary judgment should not persist in searching for evidence most favorable to its position. We find sufficient evidence from Hibler's testimony that the auxiliary tank ran out of gas and the gas lines were empty.

Hibler was cited for obstructing traffic under a municipal ordinance and paid the fine. He admitted that when he paid his fine, he understood that he was guilty of the charge.

█ Evidence that a party charged with a traffic offense merely paid a fine, is not an admission against interest in the civil case involving the offense, and is not admissible in evidence. *Barrios v. Davis*, 415 S.W.2d 714 (Tex.Civ.App.1967); *Lucas v. Burrows*, 499 S.W.2d 212 (Tex.Civ.App. 1973); *Kelly v. Simoutis*, 90 N.H. 87, 4 A.2d 868 (1939), cited on other grounds in *Trujillo v. Chavez*, 76 N.M. 703, 417 P.2d 893 (1966). However, where that person pays a fine because he thought he was guilty, evidence of the offense committed is admissible in evidence. *Kelly, supra.* We have held that a plea of guilty to an offense is admissible in evidence in a civil case. *Valencia v. Dixon*, 83 N.M. 70, 488 P.2d 120 (Ct.App.1971); *Vargas v. Clauser*, 62 N.M. 405, 311 P.2d 381 (1957). It has also been held that absent a plea of guilty, proof of conviction of criminal charges is inadmissible in the trial of a subsequent civil action for tort arising out of the same act. *Gray v. Grayson*, 76 N.M. 255, 414 P.2d 228 (1966).

█ We hold the rule to be that a party who is charged with a traffic offense and pays a fine because he understood or thought that he was guilty, is akin to a party who pleads guilty. It constitutes an admission against interest and is admissible in evidence. Admissions made by a party are the strongest kind of evidence. Such admissions are binding and conclusive upon him if uncontradicted and unexplained. *Hiniger v. Judy*, 194 Kan. 155, 398 P.2d 305 (1965). We have held that such admissions constitute substantial evidence sufficient to

support a finding. *Svejcara v. Whitman*, 82 N.M. 739, 487 P.2d 167 (Ct.App.1971).

However, Silver relies on Albuquerque Traffic Code Section 71.35 that: "It shall be unlawful for any person to operate or to stand a vehicle on any public way in such a manner as to obstruct the free use of such public way."

█ Silver did not plead or prove the existence of this ordinance. We cannot take judicial notice of municipal ordinances where summary judgment is granted. Such ordinances are matters of fact which must be pleaded and proved the same as any other fact. *Coe v. City of Albuquerque*, 81 N.M. 361, 467 P.2d 27 (1970). For purposes of summary judgment, Hibler's violation of the municipal ordinance was not available to Silver.

█ Silver also relies on § 64-18-49, N.M.S.A. 1953 (2d Repl. Vol. 9, pt. 2). It reads:

(a) Upon any highway outside of a business or residence district *no person shall stop,* park, *or leave standing any vehicle,* whether attended or unattended, *upon the paved or main-traveled part of the highway when it is practicable to stop,* park, *or so leave such vehicle off such part of said highway,* but in every event an unobstructed width of the highway opposite a standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicles shall be available from a distance of 200 feet in each direction upon such highway.

(b) This section shall *not* apply to the driver of any vehicle *which is disabled while on the paved or main-traveled portion of a highway* in such manner and *to such extent that it is impossible to avoid stopping and temporarily leaving such disabled vehicle in such position.* [Emphasis added.]

Did Hibler violate this statute? *Shelton v. Lowell*, 196 Or. 430, 249 P.2d 958, 961–62 (1952) says:

In construing the statute, we must give it a practical and common-sense meaning

and try to ascertain the intent of the legislature. The obvious meaning of that section of the statute relied upon is that where the car is temporarily disabled so that it is impossible to avoid temporarily leaving such vehicle on the highway, the driver of the stalled car is relieved from responsibility. Where an emergency is created . . . the disabled car is not permitted to remain on the highway for a protracted length of time when there is a reasonable opportunity to remove it, and in the exercise of reasonable care, it could have been removed.

The only excuse for stopping on the pavement is an emergency or exigency which leaves no other choice. *Fitzpatrick v. California & Hawaiian Sugar R. Corp.,* 309 Ill. App. 215, 32 N.E.2d 990 (1941).

Under § 64–18–49, *supra,* a driver must always park off the highway when practical to do so. *Horrocks v. Rounds,* 70 N.M. 73, 370 P.2d 799 (1962). If the vehicle is *disabled* and it is *impossible* to avoid stopping and temporarily leaving it in such position, the statute is not applicable. *Gutierrez v. Koury,* 57 N.M. 741, 263 P.2d 557 (1953); *Terrel v. Lowdermilk,* 74 N.M. 135, 391 P.2d 419 (1964).

The meaning of the words "disabled" and "impossible" are stated with clarity in the Editorial Comment in the Annotation in 15 A.L.R.2d 909, 911 (1951), entitled *"When is motor vehicle 'disabled,'"* etc. It reads:

Thus, it has been held in a number of cases that in construing a statute forbidding vehicles to stop or park on a highway, but exempting vehicles so disabled that it is impossible to avoid stopping or temporarily leaving them in such position, the word "impossible" should not be given a literal construction, but should be interpreted to mean "not reasonably practical." And it has been said in some cases that a vehicle is disabled within the meaning of the statutory exemption when it cannot be moved under its own power.

A vehicle is "disabled" when it runs out of gasoline. *Floyd v. Johnston,* 193 Ark. 518, 100 S.W.2d 975 (1937); *Hornshuh v.*

*Alldredge,* 149 Or. 419, 41 P.2d 423 (1935); *Martin v. Tracy,* 187 Minn. 529, 246 N.W. 6 (1932). Hibler's pickup truck was disabled.

As applied to the instant case, § 64–18–49 simply means this: When his vehicle became disabled, Hibler had a duty to stop or leave his pickup truck off Highway I–40 if it was reasonably practical to do so. The legal excuse is broad and comprehensive in scope. Hibler was exempt from this duty if it was not reasonably practical to move his vehicle to avoid stopping and leaving his vehicle temporarily in the center lane of Highway I–40. *Silvia v. Pennock,* 253 Iowa 776, 113 N.W.2d 749 (1962); *Shelton, supra.*

Hibler's vehicle coasted for a quarter of a mile. Ordinarily, it would be a question of fact for the jury whether Hibler could have driven his vehicle off the highway before it stopped. *Hine v. Leppard,* 5 Cal.App.2d 154, 42 P.2d 389 (1935). The evidence is undisputed, however, that he tried to turn to the right lane and off the road, but traffic was moving in the right lane and he was not able to turn. Under these circumstances, it was not reasonably practical as a matter of law for Hibler to leave his vehicle temporarily standing in the center lane.

Hibler was exempt from the duty expressed in § 64–18–49(a) and was not negligent.

Silver relies strongly on *Kelly v. Montoya,* 81 N.M. 591, 470 P.2d 563 (Ct.App.1970). *Kelly* was a second accident case. There were two separate collisions. In this respect, the facts are not similar with those in the instant case. There is, however, one factual material difference. Two of the *Kelly* defendants, involved in the *second accident,* admitted that a factual issue existed as to their violation of § 64–18–49(a). Two of the defendants involved in the *first accident* did not. However, there was a factual dispute whether the latter defendants' vehicles were on or off the highway at the time of the second collision. Because of this factual dispute, a genuine issue of material fact existed. All of the *Kelly* defendants argued that even though the statute

was violated, they could not be held negligent for lack of foreseeability. On this issue, the court disagreed. The court said:

There being factual issues as to a statutory violation, there were factual issues as to the negligence of each of the four defendants. The factual issue of negligence includes the factual issue of foreseeability. [81 N.M. at 594, 470 P.2d at 566.]

In the instant case, there was no prior accident, no admission of factual issues, no dispute over the position of Hibler's pickup on the highway, and no violation of the statute. *Kelly v. Montoya, supra,* does not assist Silver.

We conclude that a genuine issue of material fact exists with reference to Hibler's negligence in one respect as heretofore shown. Even though other acts of negligence had been shown, none of them were a proximate contributing cause of Turner's injuries.

B. *The negligence of Hibler was not a proximate contributing cause of Turner's injuries.*

 Summary judgment was granted Hibler. Hibler fulfilled his burden of positing a prima facie showing that his negligence was not a proximate or contributing cause of the Silver-Turner accident; that Silver's conduct would have produced Turner's injury independently of Hibler's negligence.

The Turner vehicle was stopped in the center lane of the highway. The mere presence of Turner's vehicle behind Hibler's was a passive condition. Silver presented no evidence that under favorable traffic conditions in a three lane highway, and with a view of long distance, the mere presence of Turner's vehicle stopped on the highway caused or contributed to cause Silver to smash into Turner's car. It naturally follows that Hibler's negligence did not cause Silver to smash into Turner's vehicle. Hibler met his burden.

The burden then shifted to Silver to establish that the presence of Turner's vehicle on the highway was a proximate contributing cause.

Silver presented no facts or evidence. He gave no explanation of his conduct in the operation of his vehicle under the circumstances prevailing. The record is silent. We cannot assume that the presence of Turner's vehicle proximately contributed to the accident. The Turner-Silver litigation will disclose Silver's conduct. But for purposes of summary judgment, we view Silver as being on a blindman's holiday operating a dangerous instrumentality. In smashing into Turner's vehicle, he was as blind as a bat and in reckless disregard of the consequences. From the cold record, Silver's negligent, wanton, or reckless conduct was the sole cause of Turner's injury. Silver failed to meet his burden.

Hibler contends that Silver's conduct was an "independent intervening cause," sufficient in and of itself to break the natural sequence of events that followed Hibler's negligence. We agree.

This legal concept involves two theories of liability: (1) Was Hibler's negligence "a" proximate cause of Turner's injury, one that concurred with that of Silver? The answer is "no." (2) Was Silver's conduct an "independent intervening cause" of Turner's injury, a cause that produced Turner's injury independent of Hibler's negligence? The answer is "yes."

To resolve the issue of "proximate cause" vs. "independent cause" creates a complex and confounded matter. Definitions are difficult to understand and apply, and New Mexico courts are in disagreement as to the application of these concepts in *second accident* cases. *Griego v. Marquez,* 89 N.M. 11, 546 P.2d 859 (Ct.App.1976); *Kelly v. Montoya, supra; Thompson v. Anderman,* 59 N.M. 400, 285 P.2d 507 (1955). See also, *Archuleta·v. Johnston,* 83 N.M. 380, 492 P.2d 997 (Ct.App.1971); *Latimer v. City of Clovis,* 83 N.M. 610, 495 P.2d 788 (Ct.App.1972); *Harless v. Ewing,* 80 N.M. 149, 452 P.2d 483 (Ct.App.1969). *Shephard v. Graham Bell Aviation Service, Inc.,* 56 N.M. 293, 243 P.2d 603 (1952); *Reif v. Morrison,* 44 N.M. 201, 100 P.2d 229 (1940); *Ferreria v. Sanchez,* 79 N.M. 768, 449 P.2d 784 (1969).

In New Mexico, and elsewhere, "The rule appears to be uniform, that, whether the intervening act in a second motor vehicle accident case was the proximate cause of plaintiff's injury, is a question of fact for the jury." *Griego, supra.* [89 N.M. at 14, 546 P.2d at 862.] The primary reason is based upon foreseeability of the subsequent injury by the first negligent offender. Ordinarily foreseeability of a subsequent injury is a question of fact for the jury. It is not so in this case.

For example, in *Ferreria, supra,* a live bullet rather than a blank was inserted in a pistol used in a school play. The pistol was discharged and plaintiff was injured. The court held that the injury was not caused by the negligence of the teacher but by the intervening act of a third person. The court said:

> It is true that the mere fact that the injury stemmed from such an intervening act does not of itself exonerate these defendants from negligence, if under the facts of this case the intervening force is reasonably foreseeable.

> \* \* \* \* \* \*

> After reading the entire record we cannot say, as a matter of law, that the intervening act of George Chavez was reasonably foreseeable by the teachers. [79 N.M. at 771, 449 P.2d at 787.]

*Ferreira* is cited in *Fagan v. Summers,* 498 P.2d 1227 (Wyo.1972). *Fagan* also holds that a defendant will be relieved of liability for his negligence by an unforeseeable intervening cause. The court said:

> In the case before us, plaintiff was not injured by negligence, if any, from rocks being on the playground. The injury was clearly caused by the intervening act of a third person—the boy who picked up and threw the rock. Appellant cites no authority for the proposition that such a result was reasonably foreseeable. [498 P.2d at 1229.]

See also *Allen v. Shiroma,* 266 Or. 567, 514 P.2d 545 (1973); *Thomas v. Bokelman,* 86 Nev. 10, 462 P.2d 1020 (1970); *Hoke v. Holcomb,* 186 So.2d 474 (Miss.1966); *Illinois Central Railroad v. Vincent,* 412 S.W.2d 874 (Ky.1967); *Commonwealth, Department of Highways v. Graham,* 410 S.W.2d 619 (Ky. 1966).

In the instant case, without any explanation by Silver, Hibler could not reasonably foresee that a "blindman" operating a motor vehicle as a dangerous instrumentality on this large highway would smash into Turner's car. Silver's conduct was an unforeseeable intervening cause as a matter of law.

The trial court properly granted Hibler summary judgment.

Affirmed.

IT IS SO ORDERED.

LOPEZ, J., concurs in result.

HERNANDEZ, J., dissents.

HERNANDEZ, Judge (dissenting).

I respectfully dissent. In my opinion the trial court erred in granting the third party defendant, David E. Hibler's motion for summary judgment. There were several issues of material fact about which reasonable minds could differ and were for the jury to resolve, to-wit: (1) Did the defendant, Hibler, run out of gas; (2) was the defendant, Hibler, negligent if he did in fact run out of gas; (3) if the defendant, Hibler, was negligent was his negligence the proximate cause of the injury to the plaintiff; (4) was the defendant, Silver, contributorily negligent; (5) if the defendant, Silver, was negligent was his negligence the sole proximate cause of the injury to the plaintiff. The law on the subject is so well established that the citation of authority is not necessary.