**Renee McCracken WILLIAMS, et al., Appellants,**

v.

**STEVES INDUSTRIES, INC., D/B/A Ingram Equipment Company, Appellee.**

**No. 13949.**

Court of Appeals of Texas, Austin.

Sept. 12, 1984.

Rehearing Denied Oct. 24, 1984.

Larry Parks, Thomas B. Long, Long, Dugger, Burner & Cotten, Austin, for appellants.

Hobart Huson, Jr., Huson, Clark, Hooks, Stephenson & O'Connor, San Antonio, for appellee.

Before PHILLIPS, C.J., and POWERS and BRADY, JJ.

PHILLIPS, Chief Justice.

Appellants Renee Williams and Kenneth Williams (husband and wife) brought this action pursuant to an automobile collision in which their two children were killed. The trial court, after a jury trial, decreed that appellants recover only a portion of the damages sought. We reverse and render in part and affirm in part.

On July 30, 1981 Renee Williams was driving an automobile in Austin, Texas on a four-lane segment of Interstate Highway 35; Mrs. Williams' two children and mother, Margaret McCracken, were passengers. The auto stalled in one of the center lanes as a result of a lack of gasoline. After Mrs. McCracken had exited from the car, a truck driven by Robert Robinson and owned by appellee Steves Industries, Inc., d/b/a Ingram Equipment Company (hereinafter Ingram) struck the Williams' vehicle from the rear. The crash resulted in injuries to the auto's occupants; the injuries proved fatal to Mrs. Williams' children.

Although the trial court rendered judgment for appellants, it declined to award damages attributable to loss of companionship resulting from the children's deaths. The jury had returned a verdict for $50,000 as to each appellant for loss of such companionship.

■ In their first point of error appellants contend that the trial court erred by declining to award damages for loss of companionship. The trial was conducted prior to the Supreme Court's decision in *Sanchez v. Schindler*, 651 S.W.2d 249 (Tex. 1983); therein the Court abolished the pecuniary loss rule and held that parents may recover damages for loss of their children's companionship. The *Sanchez* rule was made applicable "to all future causes as well as those still in the judicial process." *Sanchez v. Schindler, supra* at 254. Appellants' first point of error is sustained.

The jury found by its answer to special issue number sixteen that Mrs. Williams' failure to have in her auto sufficient gasoline to complete her journey constituted negligence; by its answer to special issue number seventeen the jury found that such negligence was a proximate cause of the collision. In special issue number twenty-five the jury found that 25% of the negligence that proximately caused the collision was attributable to Mrs. Williams. The trial court reduced appellants' recovery accordingly.

In their second and third points of error appellants argue that the trial court erred in not disregarding the jury's answer to special issues number sixteen, seventeen, and twenty-five for the reason that there is no evidence to support such findings. Although appellants' second point of error expressly challenges special issue number *fifteen* (in which the jury found that the Williams' auto stalled because of lack of gasoline), and makes no express challenge of special issue number sixteen, it is clear from the argument accompanying the second point of error that it is special issue number *sixteen*, not fifteen, which is challenged.

■ In assessing a "no evidence" point, also referred to as a legal sufficiency point, we must view the evidence in the light most favorable to the verdict and consider only the evidence and inferences that support the verdict; the point of error can be sustained only if there is a complete absence of, or no more than a scintilla of, evidence in support of the challenged special issue. *See Freeman v. Texas Compensation Ins. Co.*, 603 S.W.2d 186 (Tex.1980). As for the evidence in the present case, a fireman testified that as he approached the scene of the accident he looked for a fire hazard (gasoline spilled on the ground). He could not remember finding any gasoline on the ground; if he had he would have cleared the area of people. A police officer testified that firemen who were called to the scene of the accident told him that no gas leaked onto the highway. The officer also testified that one day after the accident he inspected the vehicle; he found no ruptures in the fuel line but found less than a cup of gas in the tank. Mrs. McCracken testified that the auto stalled, that Mrs. Williams restarted it and proceeded, and that it stalled a second time. In the event that appellants did intend to challenge special issue fifteen (wherein the jury determined that the Williams' auto stalled because of lack of gasoline), we conclude that this evidence in support thereof is legally sufficient.

The jury failed to find that the following acts constituted negligence: Mrs. Williams' failure to stop her vehicle off the traveled portion of IH35; Mrs. Williams' failure to drive her vehicle in the extreme right-hand lane of IH35; Mrs. Williams' failure to alight from the vehicle prior to the collision; Mrs. Williams' failure to remove her children from the vehicle prior to the collision; and Mrs. Williams' application of her "flashers." Mrs. Williams testified that prior to leaving her home on the day of the accident she checked her gas gauge and determined that she had enough gas to complete her anticipated journey.

■ Appellants contend that there is considerable doubt that the mere act of running out of gas can constitute negligence; they insist that, at least in the context of this case, there is no evidence that Mrs. Williams was negligent in running out of gas. We disagree.

> [I]t is the duty of an automobile driver to see that the car is maintained [in] such condition as to fuel supply that it may not become a menace to, or obstruction of, other traffic by stopping on the road, and failure to recognize a reasonable degree of care to keep it in proper condition in this respect, resulting in stalling for want of a sufficient supply of gasoline or other motor fuel, may constitute negligence.

2 Blashfield, Automobile Law and Practice § 107.24 (1979); *accord, Turner v. Silver,* 92 N.M. 313, 587 P.2d 966 (1978); *Prevette v. Bullis,* 12 N.C.App. 552, 183 S.E.2d 810 (1971); *Lee Eller Ford, Inc. v. Herod,* 353 P.2d 702 (Okla.1960); *Keller v. Breneman,* 153 Wash. 208, 279 P. 588 (1929).

While Mrs. Williams did testify that she had checked her gas gauge prior to departure, such was not subject to verification. The jury, who observed Mrs. Williams on the stand, may have concluded that her testimony was not credible.

Mrs. Williams and her husband testified that they were not aware of any problems with the gas gauge. There was evidence to indicate that no gasoline was lost at the crash site. An investigator found no evidence of leaks in the gas line; the gas tank was virtually empty. The jury was justified in drawing the conclusion that Mrs. Williams breached a duty owed by all motorists: to maintain an adequate supply of gasoline.

■ Appellants insist that even if Mrs. Williams was negligent, there was no evidence to support the finding that such negligence was a proximate cause of the collision.

> Under Texas law, proximate cause consists of two elements: (1) cause in fact, and (2) foreseeability. Both elements must be present. Cause in fact as an element of probable cause means that the negligent act or omission was a substantial factor in bringing about the injury and without which no harm would have been incurred. Foreseeability is satisfied by showing that the actor as a person of ordinary intelligence should have anticipated the danger to others by his negligent act. Foreseeability does not require that the actor anticipate just how the injuries will grow out of the particular dangerous situation.

*Missouri Pac. R. Co. v. American Statesman,* 552 S.W.2d 99 (Tex.1977) (citations omitted).

It cannot be disputed that but for Mrs. Williams' failure to have sufficient gasoline in her auto, the collision would not have occurred. Her actions in this regard were a substantial factor in bringing about the injury.

We also conclude that the evidence is legally sufficient to satisfy the foreseeability test. The evidence shows that Mrs. Williams placed her vehicle in a center lane of an interstate highway; Mrs. McCracken testified that the traffic was "intense." A person of ordinary intelligence could have foreseen that a collision could occur as a result of driving a vehicle in such a situation absent an adequate supply of gasoline.

Appellants cite *East Texas Motor Freight Lines v. Loftis,* 148 Tex. 242, 223 S.W.2d 613 (1949) for the following proposition: that when a stopped vehicle can be

seen by a careful driver, no act or omission of the operator of the stopped vehicle was a proximate cause of the collision. In *Loftis* the plaintiff contended that the defendant had negligently parked a truck parallel with a curb in violation of a city ordinance prohibiting the parking of public service vehicles at such a point; the plaintiff had rear-ended the vehicle. The court held that even assuming the truck driver was negligent, such negligence could not be a proximate cause of the collision. The court focused upon two jury findings: that the plaintiff failed to keep a proper lookout *and* that the truck was parked with visible signals "sufficient to apprise the driver of an automobile approaching from the rear of its presence and position on the street before reaching too close to avoid striking it, in the exercise of ordinary care by such driver."

*Loftis* is distinguishable from our facts in at least two respects. First, in *Loftis,* the truck was parked in a location where vehicles are normally parked, parallel to the curb of a city street. The Williams vehicle was located in an inner lane of an interstate highway upon which the traffic flow was intense; this is not a location where vehicles are normally parked.

Second, in *Loftis,* in addition to finding that the automobile driver failed to keep a proper lookout, the jury found, in essence, that the truck was visible so that a careful driver *would have seen and avoided it.* Although the jury here found that Ingram's truck driver failed to keep a proper lookout, there was no finding that the Williams' auto was visible such that a careful driver would have seen and avoided it; the jury only *failed to find* that Mrs. Williams failed to timely activate the auto's flashers.

The jury was instructed by the trial court that if "an act or omission of any person was the sole proximate cause of an occurrence, then no act or omission of any other person could have been a proximate cause." The jury obviously determined that the collision was proximately caused by the negligence of Ingram's truck driver as well as the negligence of Mrs. Williams.

We find some evidence, more than a scintilla, to sustain this finding. Appellant's second and third points of error are overruled.

■ In their first point of error appellants asserted that even if their second and third points of error are overruled, Mr. Williams' portion of damages attributable to loss of his children's companionship should not be reduced because of Mrs. Williams' negligence. We agree.

■ The negligence of one spouse may not be imputed to the other spouse, so as to bar the non-negligent spouse's recovery for a loss, where such recovery would constitute the separate property of the non-negligent spouse, *Graham v. Franco,* 488 S.W.2d 390 (Tex.1972), unless legal relationships other than marital would justify such action, *Wilkinson v. Stevison,* 514 S.W.2d 895 (Tex.1974). Recovery for personal injuries to the body of a spouse is the separate property of that spouse. *Graham v. Franco, supra.*

■ In *Whittlesey v. Miller,* 572 S.W.2d 665 (Tex.1978) it was recognized that loss of spousal consortium represented damage to emotional interests, that such loss is a personal injury, and that such recovery is therefore the separate property of the spouse so deprived of consortium. We see no practical distinction between the loss of spousal consortium and the loss of companionship of children; both constitute damage to emotional interests. We hold that a recovery for the loss of companionship of children is separate property. Therefore, only Mrs. Williams' portion of such damages may be reduced in proportion to her negligence.

In special issue number nine the jury found that Ingram, in permitting Robinson to drive its truck (a commercial vehicle), knew, or in the exercise of ordinary care should have known, that Robinson had no commercial license. In special issue number ten the jury found such action in permitting Robinson to drive without a commercial license was a heedless and reckless disregard of the rights of others; the jury determined in special issue number thirty-

three that appellants should be awarded $250,000 as exemplary damages.

In their fourth point of error appellants contend that the trial court erred in failing to award them the exemplary damages found by the jury. Appellants' claim to exemplary damages is based upon a theory of negligent entrustment, not upon a theory of respondeat superior. *See Montgomery Ward and Co. v. Marvin Riggs Co.,* 584 S.W.2d 863 (Tex.Civ.App.1979, writ ref'd n.r.e.); *Hines v. Nelson,* 547 S.W.2d 378 (Tex.Civ.App.1977, no writ).

 A plaintiff may establish a cause of action for negligent entrustment by establishing the following facts: (1) that the defendant permitted another to drive the defendant's vehicle; (2) that at the time of entrustment the driver did not have a driver's license; (3) that the defendant actually knew that the driver did not have such license, *or* if the defendant did not have such knowledge that the defendant was in fact negligent in permitting the driver to drive the vehicle without ascertaining whether he had a driver's license; (4) that while in possession under such permission the driver drove the vehicle negligently; and (5) that such negligence on the driver's part proximately caused the collision and the injuries and damage to the plaintiff. *Mundy v. Pirie-Slaughter Motor Co.,* 146 Tex. 314, 206 S.W.2d 587 (1947). It is not necessary to submit a special issue inquiring whether the *owner's* negligence was a proximate cause of the accident since the causal connection is shown between the negligence of the owner in lending the automobile and the injury to the plaintiff. *Broesche v. Bullock,* 427 S.W.2d 89 (Tex.Civ.App.1968, writ ref'd n.r. e.); *see Spratling v. Butler,* 150 Tex. 369, 240 S.W.2d 1016 (1951).

 The mere entrustment of a vehicle to a person known not to have a driver's license is per se negligent entrustment; this is so because such action is violative of a statute. *Mundy v. Pirie-Slaughter Motor Co., supra; Broesche v. Bullock, supra;* Tex.Rev.Civ.Stat.Ann. art. 6687b, §§ 36 & 44(a) (1977). However, it has been

held that exemplary damages cannot be recovered for the mere violation of a statute, whether it be one carrying a criminal penalty or not; the act complained of not only must be unlawful but also must be of a wanton and malicious nature, and an act will not be deemed malicious merely because it is unlawful or wrongful. *Jones v. Ross,* 141 Tex. 415, 173 S.W.2d 1022 (1943); *see Ogle v. Craig,* 464 S.W.2d 95 (Tex. 1971); *Ware v. Paxton,* 359 S.W.2d 897 (Tex.1962).

 This limitation on the type of act which may constitute gross negligence, thereby justifying the imposition of exemplary damages, is consistent with the currently-accepted definition of gross negligence. Gross negligence is a heedless and reckless disregard for the rights of others; "heedless and reckless disregard" means such an entire want of care as to indicate that the act or omission in question was the result of conscious indifference to the rights, welfare, or safety of the persons affected by it. *Burk Royalty v. Walls,* 616 S.W.2d 911 (Tex.1981).

 The jury was here instructed according to the *Burk* definition. Ingram's action in permitting Robinson to drive its vehicle without a commercial license was the *only* act found by the jury to constitute a heedless and reckless disregard of the rights of others. We hold that, as a matter of law, this act alone is not sufficient to justify the imposition of exemplary damages.

Appellant points to evidence indicating that Ingram continued to allow Robinson to operate its commercial vehicles without a license for several months after the accident. We fail to see how this has any bearing on the nature of the negligent entrustment by Ingram on the day of the accident. Any act occurring subsequent to the accident could not be a proximate cause of the accident.

There is no evidence in the record to indicate that, prior to the accident, Robinson was an incompetent driver. There is no evidence in the record to sustain the

finding of gross negligence. The trial court did not err in failing to award exemplary damages. Appellants' fourth point of error is overruled.

■ In special issue number 32(c) the jury was asked to determine the sum of money that would compensate Mrs. Williams for her damages resulting from the death of her children, solely taking into account any past and future mental injury; the jury answered $200,000. In its sole cross-point Ingram contends that the evidence is legally, or alternatively factually, insufficient to support such finding. Ingram only attacks the sufficiency of the evidence to support a conclusion that Mrs. Williams *perceived* the injuries to and/or the deaths of her children.

In *Sanchez v. Schindler, supra,* the Supreme Court stated that "[t]he destruction of the parent-child relationship results in mental anguish, and it would be unrealistic to separate injury to the familial relationship from emotional injury." Nevertheless, the jury here was requested to separately compute damages based upon actual mental injury resulting from the death of the children and damages based upon loss of the children's companionship. This separate submission of special issues is not complained of by point of error.

Prior to *Sanchez,* a parent could not recover damages for loss of their children's companionship under Tex.Rev.Civ.Stat. Ann. art. 4671, et seq. (Supp.1984) (Wrongful Death Act). *See Bedgood v. Madalin,* 600 S.W.2d 773 (Tex.1980). However, several Texas intermediate appellate courts had allowed plaintiff-parents to recover for negligent infliction of emotional injury, resulting from accidents involving their children, upon a showing that: (1) the parent was located near the scene of the accident and (2) the emotional injury resulted from a "contemporaneous perception of the accident." *Landreth v. Reed,* 570 S.W.2d 486 (Tex.Civ.App.1978, no writ); *see* R. Prentice, *Dillon v. Legg Comes to Texas,* 47 Tex.Bar J. 383 (1984). The requirement that a parent prove a "contemporaneous perception of the accident" involving a child has been cast in doubt by *Sanchez v. Schindler, supra.* *See Gulf States Utilities Co. v. Reed,* 659 S.W.2d 849 (Tex.App. 1983, writ ref'd n.r.e.).

We need not decide whether a "contemporaneous perception" is a prerequisite for Mrs. Williams' recovery of damages for mental anguish, since we find the evidence legally and factually sufficient to support the conclusion that Mrs. Williams did perceive the injuries to her children at the time of the accident. Ingram points to Mrs. Williams' testimony to the effect that she had no present recall of having seen her children after the impact; that she presently recalled hearing no sounds that she could attribute to the children; and that she remembered someone asking her where her children were and that she responded that they were in the back seat.

Mr. and Mrs. Williams point to the following testimony, given by various witnesses: that immediately after the accident occurred Robinson stated that Mrs. Williams was conscious; that Mrs. Williams was in her auto at the time of the collision; that after the collision the children were "laying beside" Mrs. Williams, "one on top of the other in the front seat"; that one child was removed from the vehicle through the front passenger window; that the other child was brought "across the lap of the driver" and removed from the auto through an open window; that Mrs. Williams screamed when the child was moved across her; that the one scream was the only sound the witness heard Mrs. Williams make at the scene; that Mrs. Williams' eyes were open; and that Mrs. Williams communicated with several people while still trapped in the car (inquiring at least once as to the condition of her children). A psychologist testified that "the evidence lends more support to some level of perception or apperception [by Mrs. Williams] at the time of the accident, that there was some level of awareness." The psychologist also testified that based upon certain details of the accident (supplied hypothetically) and based upon his impression of Mrs. Williams' condition, that the informa-

tion "suggests that there was a tremendous blocking or denial or oppression of what [Mrs. Williams] apparently was aware of at the time of the accident...."

There is other evidence which would indicate that Mrs. Williams was confused, semi-conscious, or unconscious following the accident. However, we have found some evidence, more than a scintilla, to support the jury's answer to special issue number 32(c). Additionally, viewing all of the evidence, we are unable to say that the jury's answer is supported by insufficient evidence so as to constitute a manifest injustice. 4 McDonald, Texas Civil Practice § 18.14 (1971). Ingram's cross-point is overruled.

That portion of the trial court's judgment denying Kenneth Williams and Renee Williams recovery for loss of companionship is reversed. We render judgment that Kenneth Williams, individually, recover the sum of $50,000 from Ingram. We also render judgment that Renee Williams, individually, recover $37,500 from Ingram in addition to the $150,000 already awarded her. The judgment is otherwise affirmed.

BRADY, Justice, dissenting.

I disagree with the majority opinion wherein it holds that as a matter of law the act of Ingram in permitting Robinson to drive its commercial vehicle without a commercial license, "being the *only* act found by the jury to constitute a heedless and reckless disregard of the rights of others," is not sufficient to justify imposition of exemplary damages.

As the majority opinion points out, the jury was instructed according to the definition of gross negligence found in *Burk Royalty Co. v. Walls,* 616 S.W.2d 911 (Tex. 1981). In *Burk,* the Supreme Court held that we must employ the "traditional no evidence test" in determining whether there is evidence to support the jury's verdict. The Court in *Burk* stated:

> When there is some evidence of defendant's entire want of care and also some evidence of "some care" by the defendant, the jury finding of gross negligence

through entire want of care resolves the issue, and the appellate court is bound by the finding in testing for legal insufficiency.

*Id.* at 921. In testing a jury finding of gross negligence, the same no evidence test should apply as to any other fact issue. If the jury finds gross negligence, as it did here, the defendant has the burden of establishing that there is NO evidence to support the finding. In the present case, the jury found that appellant was guilty of gross negligence because the appellants "knew, or in the exercise of ordinary care should have known" that Robinson had no commercial license. Further, the fact that appellant continued to permit its driver to drive the commercial vehicles after this accident without requiring him to pass the test and acquire a commercial operator's license shows the state of mind of appellant. As former Chief Justice Greenhill stated in his concurring opinion in *Burk:*

> The bottom line, as I read the cases, is the state of mind of the defendant. Did he or she act with callous or conscious indifference to the safety of others?

*Id.* at 926. And, as stated in the majority opinion in *Burk:*

> The essence of gross negligence is not the neglect which must, of course, exist. What lifts *ordinary* negligence into *gross* negligence is the mental attitude of the defendant; that is what justifies the penal nature of the imposition of exemplary damages.

*Id.* at 922. Certainly the fact that months after this tragic occurrence appellee still failed to see to it that its driver had taken and passed the necessary tests for obtaining a commercial operator's license is some evidence of gross negligence. We can certainly infer a mental state from Ingram's conscious indifference to see that its driver was properly and legally licensed to drive its commercial trucks. *Cf. Montgomery Ward & Co. v. Marvin Riggs Co.,* 584 S.W.2d 863 (Tex.Civ.App.1979, writ ref'd n.r.e.); *Wilson N. Jones Memorial Hospital v. Davis,* 553 S.W.2d 180 (Tex.Civ.App. 1977, writ ref'd n.r.e.); *Hines v. Nelson,*

547 S.W.2d 378 (Tex.Civ.App.1977, no writ); *Adams Leasing Co. v. Knighton,* 456 S.W.2d 574 (Tex.Civ.App.1970, no writ); *Goff v. Lubbock Bldg. Products,* 267 S.W.2d 201 (Tex.Civ.App.1953, writ ref'd n.r.e.).

In making this determination, all evidence must be considered in a light most favorable to the party in whose favor the jury verdict has been rendered, and every reasonable inference deducible from the evidence is to be indulged in such party's favor. Stated another way, the traditional standard to be applied by an appellate court in testing a "no evidence" point is for the court to consider ONLY the evidence, when viewed in its most favorable light, that tends to support the jury's finding of gross negligence and *to disregard all evidence leading to a contrary conclusion.* *Burk Royalty Co. v. Walls, supra,* at 915; *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex. 1965); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951); Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Tex.L.Rev. 361 (1960).