683 P.2d 39

**NEW MEXICO TIRE & BATTERY CO., INC. and Yearwood and House Tire and Battery Co., Inc., Plaintiffs-Appellees,**

v.

**OLE TIRES, INC., Defendant-Appellant.**

**No. 15282.**

Supreme Court of New Mexico.

June 6, 1984.

Thomas F. Hooker, Jr., P.C., Albuquerque, for plaintiffs-appellees.

Frank Bachicha, Jr., Bachicha Legal Services, P.A., Santa Fe, for defendant-appellant.

**OPINION**

WALTERS, Justice.

From a motion granting summary judgment to plaintiffs on two open account debts, defendant appeals.

Plaintiffs' claims were joined in a four-count single complaint, the separate claims of each plaintiff being set forth in separate counts. Attached to the complaint were several exhibits. Exhibit A was a sworn statement of James F. House, president of plaintiff New Mexico Tire and Battery Co., Inc. (Tire Company), alleging the balance of Ole Tires, Inc.'s (Ole) account and attaching copies of the ledger cards showing $6,897.31 due from Ole as of April 30, 1983. Exhibit B was the affidavit of F.E. Yearwood, president of plaintiff Yearwood and House, Inc. (Yearwood), attached to which were billing statements showing a balance of $64,773.18 due as of April 1983. Exhibit C was a photocopy of a $16,000 check payable to Yearwood from Ole, stamped "insufficient funds." Exhibit D was a copy of a certified letter from counsel for Yearwood to Ole, advising Ole of the dishonored check, the criminal nature of knowingly issuing an insufficient check and failing to pay it after notice of dishonor, and a demand for payment.

Ole filed an answer and counterclaim to the complaint of plaintiffs in which it denied the debts alleged, and affirmatively alleged that when the $16,000 check was returned to Yearwood, the parties agreed to add the $16,000 "back to the open account and future payments were to be applied to the cancellation of the total indebtedness, including the amount of that check." In its counterclaim Ole alleged that Yearwood acted maliciously in "threatening criminal sanctions," thus damaging Ole's reputation in the amount of $20,000. Ole asked $5,000 in punitive damages for Yearwood's "wilfull and reckless disregard" of the parties' agreement that the $16,000 would be charged back to Ole's account.

On July 11, 1983, the two plaintiffs filed a joint motion for summary judgment unaccompanied by any documents or affidavits, and a motion for dismissal of Ole's counterclaim. Ole's Response to Motion for Summary Judgment, filed on July 22nd, did not controvert the summary judgment motion with affidavits or other supplementary materials. *See* NMSA 1978, Civ.P.R. 56(c) (Repl.Pamp.1980). The Response noted that plaintiffs had not complied with the local rule requiring a "short, concise statement of the grounds in support" of a summary judgment motion; that the amount of the debts, the method of payment, and other material facts were disputed by the pleadings; and that plaintiffs' motion was not supported by interrogatory answers, depositions or affidavits. The Response was not verified.

The trial court granted the motion and entered summary judgment against Ole in a total amount of $71,670.49, together with interest of 18% per annum from April 31, 1983, until paid, and Ole appeals. The judgment was for the combined amount pled by both plaintiffs.

Ole contends that issues of material fact existed which precluded summary judgment; plaintiffs claim that they made a prima facie case pursuant to New Mexico's verified accounts statute, NMSA 1978, Section 38–7–1, and because Ole did not file a verified answer, summary judgment was proper.

Our difficulty with the arguments of both parties is that the procedure followed in this case fits neither the verified accounts statute relied on by plaintiffs nor the rule for granting summary judgment.

Section 38–7–1, entitled "Verified accounts; instruments in writing; denial under oath," reads as follows:

Except as provided in the Uniform Commercial Code [55–1–101 to 55–9–507 NMSA 1978], accounts duly verified by the oath of the party claiming the same, or his agent, and promissory notes and other instruments in writing, not barred by law, are sufficient evidence in any suit to enable the plaintiff to recover judgment for the amount thereof, unless the defendant or his agent denies the same under oath.

It would appear, from the form of the complaint and the documents thereto attached, as well as from plaintiffs' brief, that plaintiffs intended to proceed under the above statute. Apparently, however, plaintiffs and the trial court misapprehended the limitations of the statutory procedure, and assumed the statute to be self-executing.

Allowance of judgment on the verified account of a party has a long history in this jurisdiction. Laws 1880, ch. 5, § 18, the progenitor of the current statute, contained language identical to that contained in the current statute:

Accounts duly verified by the oath of the party claiming the same, or his agent, * * * shall be sufficient evidence in any suit to enable the plaintiff to recover judgment for the amount thereof, unless the defendant, or his agent, shall deny the same under oath.

It was said in *Richardson v. Pierce*, 14 N.M. 334, 339, 93 P. 715, 716 (1908), that the "very purpose" of the statute was "to obviate the necessity of the introduction of the books of original entry * * * where the truth of such accounts is not directly denied under oath." In *Wagner v. Hunton,*

76 N.M. 194, 413 P.2d 474 (1966), the statute was again construed. Plaintiff there, an attorney, had attached his affidavit to the complaint, which outlined his fees for services rendered, relying for judgment on the provisions of NMSA 1953, Section 20–2–7, another forerunner of the current statute. Defendant failed to answer, under oath or otherwise. The trial court refused to grant a default judgment. Chief Justice Carmody, writing for this Court, looked to the default judgment rule and held that the verified accounts statute was "merely a rule of evidence" excusing the need to introduce the original books and records, but it did not relieve a party from producing evidence to support a judgment and "unless and until offered in evidence, it [the verified account] remained as it was—merely a part of the pleadings." *Id.* at 195, 413 P.2d at 475. The judgment of the trial court was sustained.

We observe that plaintiff in *Wagner*, although relying on the verified account statute's provisions, without offering any evidence or testimony, applied for a default judgment. In the instant case, plaintiff, assertedly acting also under the statute and also without offering evidence or testimony, moved for summary judgment. Upon the reasoning of *Wagner*, we might well hold that summary judgment based on verified attachments to the plaintiffs' pleadings was improper for two reasons: there is nothing in plaintiffs' affidavits to show that the affiants' statements were made upon personal knowledge, or that affiants were competent to testify regarding the accuracy of the records, as required by the rule for summary judgment, NMSA 1978, Civ.P.Rule 56 (Repl.Pamp.1980). *See Martinez v. Metzgar*, 97 N.M. 173, 637 P.2d 1228 (1981).

But *Wagner* was not the last word on Section 38–7–1. In 1973, this Court held that in a proceeding under the statute (then NMSA 1953, Section 20–2–7), if plaintiff submitted the verified account attached to the complaint into evidence, defendant could not thereafter rely at trial on sworn testimony denying the indebtedness to defeat plaintiff's claim. *Alexander Concrete*

*Co. v. Western States Mechanical Contractors, Inc.*, 84 N.M. 558, 505 P.2d 1234 (1973). We said there:

The purpose of this statute * * * would be thwarted unless the denial of verified accounts was required prior to the time of trial. If we were to accept appellant's interpretation of the statute and allow denial under oath at trial after plaintiff has rested his case, then it would always be necessary to go through the entire proceeding of proving such accounts rather than eliminating such necessity, as intended.

For Section 20–2–7 to have any credence whatsoever, the denial under oath required in the statute must come before the time of trial, otherwise the purpose of the statute fails. * * * Accepting the purpose of this statute as that specified in Richardson and Wagner, supra, we can only hold that it was the intent of the legislature that the denial under oath must be in writing and must be filed as a part of the pleadings. If such is done, then the parties are free to prepare their cases accordingly.

*Id.* at 559, 505 P.2d at 1235. *Alexander* reaffirmed the necessity of moving the complaint's exhibits into evidence.

It thus appears that plaintiffs here did not fully comply with the required steps for obtaining either summary judgment or judgment pursuant to Section 38–7–1. On the other hand, Ole failed to file a verified answer, denying under oath the allegations of the complaint. Had plaintiffs proceeded to introduce their exhibits at that point, they would have been entitled to judgment under the statute and the rationale of *Alexander*.

We are not prepared to say that Ole's "Response to Motion for Summary Judgment" was insufficient to overcome a summary judgment motion. NMSA 1978, Civ. P.Rule 56(e) (Repl.Pamp.1980) requires the adverse party to set forth specific facts showing there is a genuine issue for trial by "his response, by affidavits or as otherwise provided in this rule." The rule does

not require that contravention of the documents relied on by the movant necessarily be made by affidavit. In Ole's Response, it called attention to the lack of supporting documents to support plaintiffs' motion; insofar as Ole was concerned, the only things before the trial court were the pleadings and they certainly showed issues of material fact. From the record before us, it appears that only when the motion for summary judgment was argued was it disclosed that plaintiffs intended to rely on the affidavits attached to the complaint. As we have said, although those affidavits might have supported judgment under Section 38–7–1, they were insufficient to meet the provisions of Rule 56(e). *See Carter v. Burn Construction Co.*, 85 N.M. 27, 508 P.2d 1324, *cert. denied* 85 N.M. 5, 508 P.2d 1302 (1973).

The decision must be reversed and the case remanded for further consideration under one procedure or the other, but not as a hybrid of both summary judgment and the statutory proceeding.

A further matter will remain to be decided upon remand of this matter, should a judgment again be entered for plaintiffs. The trial court awarded a single judgment in the aggregate amount of both plaintiffs' claims, plus attorney fees of $1,000, and it allowed interest "on all of the aforesaid sums at the rate of eighteen percent (18%) per annum from April 31 [sic], 1983 until paid." April 30, 1983, was the date of the last entry in Tire Company's books; Yearwood's last entry was marked "April 1983." Copies of Yearwood's running monthly statements, Exhibit B attached to the complaint, are imprinted with the legend: "1½% Service Charge on Balance over 30 days." It appears that the final ten entries on Yearwood's last statement were interest charges. Tire Company's ledger cards covering approximately a nine-month period, Exhibit A, show a total of seven interest charge entries, which seem to approximate a charge of 1½% per month on the unpaid balances, but there is nothing else in Exhibit A to indicate any rate of interest as a term of its open account with defendant.

NMSA 1978, Section 56–8–4 (Cum.Supp. 1983), provides, in the portion pertinent to this appeal, as follows:

A. Interest shall be allowed on judgments and decrees for the payment of money from entry and shall be calculated at the rate of fifteen percent per year, unless the judgment is rendered on a written instrument having a different rate of interest, in which case interest shall be computed at the rate specified in the instrument.

The allowance of 18% on a judgment for Yearwood until the debt is paid would be proper because there is "a written instrument" having a different rate of interest than the 15% permitted by Section 56–8–4. Whether the same would apply to Tire Company's account might possibly be inferred from the Exhibit A ledger cards, but ledger cards are not statements to a customer, and such records are by no means conclusive, in the absence of any evidence that defendant was notified, or agreed by "a written instrument," that its open account was subject to an interest charge of 18% per year.

The trial court is reversed and the matter is remanded for further consideration and proceedings in accordance with this Opinion.

IT IS SO ORDERED.

FEDERICI, C.J., and RIORDAN, J., concur.