This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**LINDA SEXTON,**

Plaintiff-Appellant,

v.                                                                          **No. 30,876**

**RUSSELL THOMPSON,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF RIO ARRIBA COUNTY**
**Sheri A. Raphaelson, District Judge**

D. Scott Reidel
Kathleen Kentish Lucero
Espanola, NM

for Appellant

Martin Martinez
Espanola, NM

for Appellee

**MEMORANDUM OPINION**

**VIGIL, Judge.**

Plaintiff appeals an order granting summary judgment in favor of Defendant. In this Court's second notice of proposed summary disposition, we proposed to affirm. Plaintiff has filed a memorandum in opposition, which we have duly considered. Defendant has filed a memorandum in support, which we have not considered, as the memorandum was untimely and Defendant sought no extension. Because we are not persuaded by Plaintiff's arguments, we affirm.

In this Court's second notice of proposed summary disposition, we proposed to hold that Plaintiff failed to meet her burden of making "an affirmative showing by affidavit or other admissible evidence that there is a genuine issue of material fact" after Defendant made a prima facie showing that summary judgment was warranted. *See Schwartzman v. Schwartzman Packing Co.*, 99 N.M. 436, 441, 659 P.2d 888, 893 (1983). We pointed out that the evidence Plaintiff relied upon was an unsworn interview with Randy Cordova, which is not competent evidence to defeat summary judgment. *See Marquez v. Gomez*, 116 N.M. 626, 631-32, 866 P.2d 354, 359-60 (Ct. App. 1991) (holding that the district court did not abuse its discretion when it refused to consider unsworn witness statements submitted in response to a motion for summary judgment). We also stated that the unsworn interview on which Plaintiff relied actually supported Defendant's motion in that it clearly stated that there was no greater damage to the pool caused by the tortious acts alleged in this case. To the degree that the interview was ambiguous with respect to any greater damage to the

deck, we noted that Plaintiff never argued a theory that the second flood damaged the pool decking even if it caused no greater damage to the pool itself.

In response, Plaintiff argues that an affidavit in the record demonstrates that Cordova's statement was a sworn statement. [MIO 2] We disagree. The affidavit in the record was "sworn, upon oath" that the transcript of the interview "is a true and correct copy of the statement I gave." [RP 155] Swearing that a written document contains an accurate transcription of statements made during an interview is not the same as swearing that the statements made during the interview are true. Therefore we affirm based on the district court's expressed concerns about this unsworn evidence.

Furthermore, even if the use of the unsworn interview was proper, we would nevertheless conclude that it did not demonstrate a question of material fact. Defendant's motion was accompanied by sworn affidavits clearly expressing that neither the pool nor the decking suffered any greater damage as a result of the second flood. [RP 74] Plaintiff's response asserted that "[a]n issue exists as to whether the flood at issue caused the damages to Plaintiff's swimming pool and deck. Randy Cordova will testify that the flood damaged Plaintiff's swimming pool and deck." [RP 119] As support for this statement, Plaintiff attached a portion of Cordova's unsworn interview containing the following exchange:

> [The preceding page of the interview was not included. The page begins with:] flood or do you remember?

RC: That ____ was there after the first flood, when it first ____ and that's what Linda was saying to fix.

SR: So obviously the effects of _____ was made worse by the second flood or do know [sic]?

RC: No, the ____ and the hairline cracks were pretty much the same.

SR: Okay, so the main damage then

RC: Would have been to the deck, all parts of the deck, the fence and as far as elevating the pool now it's gotta be leveled.

SR: So Linda before this second flooding, Linda Sexton was getting estimates. You don't have any idea what those estimates were to repair the pool? Did Linda ever tell you?

RC: She did tell me but I'm not good at numbers, so I don't remember.

SR: Do you have any idea what the estimates are now after the second flooding?

RC: After the second flood she also told me but I

SR: Do you know whether Chris or any other tenant has ever wanted to use the swimming pool?

RC: Yes, Chris rented the house with the understanding that Linda was going to get the swimming pool and that's what we were trying to do right when it flooded again.

[RP 128 (The blanks in the statement are apparently portions of the tape that were inaudible.)] This statement clearly does not support Plaintiff's assertion that Cordova would testify that the second flood damaged Plaintiff's swimming pool and deck. As

4

the district court noted in its order, the only question specifically asked about further damage to the pool and decking caused by the second flood was: "So obviously the effects of _____was made worse by the second flood or do know [sic]?" and Cordova's answer was, " No, the _____ and the hairline cracks were pretty much the same." This statement did not support Plaintiff's claim that both the pool and the deck were in a worse condition after the second flood than they were before.

To the degree that any statement in Plaintiff's memorandum in opposition could be read to assert a theory on appeal that even if the pool was not damaged by the second flood, there is a material question of fact as to whether the decking was damaged, this Court will not consider a theory on appeal that was not presented to the district court. *See Spectron Dev. Lab. v. Am. Hollow Boring Co.,* 123 N.M. 170, 178, 936 P.2d 852, 860 (Ct. App. 1997) (declining to consider the plaintiff's theories of products liability on appeal that were not presented to district court in response to a defense motion for summary judgment). There is nothing in Plaintiff's response or in her motion to reconsider that would indicate that she intended to put forth this theory, since she simply asserted that Cordova could testify that both the swimming pool and deck were more damaged after the second flood. [RP 119, 165-66] As we have explained, she did not have evidence to support her claim that Cordova would testify that the pool was in a worse condition due to the second flood, and she did not

5

alert the district court to any theory that even if there was no evidence of increased damage to the pool, her claim could go forward for the damage to the decking.

Furthermore, we do not believe that the evidence on this issue was so unambiguous that the district court should have been alerted to it on its own or as part of its consideration of the motion as a whole. Although the quoted sections of Cordova's interview include information about the damage to the deck, it is not clear that his statements are intended to express that the damage to the deck was worse after the flood than it was before, since the questions asked by the interviewer alternate between questions about the damage prior to and after the second flood. If Plaintiff had wished to make clear that Cordova did in fact believe that the damage to the deck, but not the pool, was worse after the flood alleged in the complaint, she could have done so by providing an affidavit to this effect to the district court.

It was Plaintiff's burden to provide admissible evidence demonstrating an issue of material fact to defeat summary judgment, and she failed to meet this burden. Therefore, for the reasons stated in this opinion and in our second notice of proposed summary disposition, we affirm.

**IT IS SO ORDERED.**

_____

**MICHAEL E. VIGIL, Judge**

**WE CONCUR:**

_____

**CELIA FOY CASTILLO, Chief Judge**

_____

**LINDA M. VANZI, Judge**